IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTONIO D. McDADE,       )
                                 )
      Petitioner,          )
                                 )
    v.                  )      Civil Action No. 2:11cv810-MHT
                                 )           (WO)
UNITED STATES OF AMERICA,   )
                                 )
      Respondent.       )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

## I.   INTRODUCTION

On August 7, 2009, the petitioner, Antonio D. McDade ("McDade"), pled guilty to production of child pornography, in violation of 18 U.S.C. § 2251(a).  On February 23, 2010, the district court sentenced McDade to 240 months in prison.

McDade appealed, arguing that (1) the district court erroneously applied a two-level enhancement of his offense level under U.S.S.G. § 2G2.1(b)(2)(A) upon finding that his offense involved "the commission of a sexual act or sexual contact"; (2) the district court erroneously applied a four-level enhancement under U.S.S.G. § 2G2.1(b)(4) upon finding that his offense involved sadistic conduct; and (3) his sentence violated the Eight Amendment's prohibition against cruel and unusual punishment.  On October 8, 2010, the Eleventh Circuit rejected McDade's arguments and affirmed his conviction and sentence.

*United States v. McDade*, 399 Fed. App'x 520 (11th Cir. 2010) (unpublished).

On September 26, 2011, McDade filed this § 2255 motion asserting the following claims:

      1.      Counsel rendered ineffective assistance by failing to adequately investigate and present evidence of McDade's incompetence and by allowing him to plead guilty despite his incompetence to do so.

      2.      Counsel rendered ineffective assistance at sentencing by failing to consult with McDade before advocating for a 20-year prison sentence.

      3.      His conviction is unconstitutional because he was not competent to plead guilty.

Doc. No. 1 at 4; Doc. No. 2.[1]

Based on the court's consideration of the parties' submissions, the record, and the applicable law, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, McDade's § 2255 motion should be denied.

## II.   DISCUSSION

### A.   General Standard of Review

Collateral review is not a substitute for direct appeal; therefore, the grounds for

---

[1] References to document numbers ("Doc. No.") are to those assigned by the Clerk of Court to pleadings docketed in this action or, where indicated, to pleadings docketed in the underlying criminal proceedings, Criminal Action No. 2:07cr222-MH.  Page references are to those assigned by CM/ECF.  References to exhibits (Ex.") are to those filed by the Government with its answer, Doc. No. 19.

collateral attack on final judgments of conviction are extremely limited.  A federal prisoner is entitled to relief under 28 U.S.C. § 2255 only if the district court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. McDade*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

3

**B.     Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006).   Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *see Strickland*, 466 U.S. at 687–88 & 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted).  Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id.*

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  The

4

prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

## 1.    *Failure to Adequately Investigate and Present Evidence of Incompetence*

McDade claims that his counsel rendered ineffective assistance by failing to adequately investigate and present evidence of his incompetence. Doc. No. 1 at 4; Doc. No. 2 at 11-25. In this regard, McDade argues that (1) his counsel should have done more to investigate and present evidence of his mental deficiencies before and during a competency hearing that was held prior to entry of his guilty plea (Doc. No. 2 at 13-18); (2) his counsel should have requested additional competency determinations at subsequent court proceedings (*id*. at 19-20); and (3) his counsel should not have allowed him to plead guilty in light of his

incompetence (*id*. at 21-25).

"Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)). In order to prevail on a claim of incompetency, the defendant must prove by a preponderance of the evidence that he is in fact incompetent to stand trial. *See* 18 U.S.C. § 4241(d); *Battle*, 419 F.3d at 1298-99; *Johnston v. Singletary*, 162 F.3d 630, 637 n.7 (11th Cir. 1998); *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995). Competence to plead guilty is measured by the same standard as competence to stand trial. *Godinez v. Moran*, 509 U.S. 389, 398 (1993).

The record reflects that in December 2008, McDade, through counsel, filed a notice of insanity defense. Ex. C. McDade's notice attached a report, authored by forensic psychologist Dr. Karl Kirkland in connection with a claim by McDade for social security benefits, diagnosing McDade with mild mental retardation, among other things. Ex. G. Dr. Kirkland's evaluation concluded that McDade had a full-scale IQ of 58, which falls in the range of mild mental retardation. *Id*. at 1. Dr. Kirkland observed in the report that McDade had a history of violent and assaultive behavior that he had learned to blame, inappropriately, "on other factors." *Id*. at 3. Dr. Kirkland did not opine as to McDade's competency to stand trial.

At the request of the Government, the district court then ordered a psychiatric

evaluation of McDade by the Federal Bureau of Prisons.  Exs. D & E.  After the evaluation, Dr. Lisa Feldman of the Prisons Bureau in Miami, Florida, filed a report stating that McDade was likely malingering and that he "demonstrated no active mental states that would interfere with his rational understanding of the proceedings against him or his ability to assist toward his defense, if he was motivated to do so."  Ex. F at 14.  Dr. Feldman also noted that McDade's pattern of responses on the verbal portion of a cognitive-functioning test suggested that he was not trying to give correct answers and that his performance on the nonverbal portion of the test indicated that he "deliberately suppressed correct answer choices and instead chose incorrect answers," in an apparent attempt to "misrepresent himself as cognitively impaired."  *Id*. at 10.

McDade's counsel offered Dr. Kirkland's report into evidence at a competency hearing held on April 28, 2009.  However, counsel did not call witnesses to testify at the hearing.  Based on Dr. Kirkland's report and the psychiatric evaluation by Dr. Feldman, the district court found that McDade was not currently suffering from a mental disease or defect such that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  Ex. I at 2-3.  Accordingly, the court declared McDade mentally competent to stand trial.  *Id*. at 3.

In addressing McDade's allegations of ineffective assistance, McDade's trial counsel, Michael J. Petersen, filed an affidavit in which he avers, in relevant part, as follows:

> First, McDade asserts in Ground One that he was denied effective counsel because even though McDade could not read or write and has been

7

consistently diagnosed as mildly mentally retarded and that while your Affiant argued McDade had deficient capacity, your Affiant did not have McDade evaluated for this determination, but instead relied on a psychological evaluation done regarding a claim of Social Security Disability. Your Affiant would agree that McDade is mildly mentally retarded and illiterate. However, the evaluation conducted by Dr. Kirkland on August 30, 2004, also noted that McDade displayed "no bizarre behavior." Furthermore, Dr. Kirkland found that McDade's "thought process was generally coherent and goal-directed." Furthermore, Dr. Kirkland stated that McDade "did not evidence any fine or gross motor deficits," McDade's "speech was normal in terms of flow, tone, rate, and rhythm," there "did not appear to" be "any bearing or visual problems," that McDade "has a history of poor judgment and very poor insight into his own behavior," and, finally, McDade "tends to blame others for his actions in a very naive fashion." These findings mirror those found in the report by Dr. Lisa Feldman. Throughout your Affiant's extensive interactions with McDade over a period of many months, McDade consistently behaved in a manner that did not lead your Affiant to question his competency. For example, your Affiant contracted with Dr. Dan Givens to conduct a literacy evaluation of McDade while McDade was detained at the Autauga Metro Jail. Your Affiant met with McDade and Dr. Givens at the facility and explained to McDade that Dr. Givens had been hired by your Affiant to give McDade a test to see how well he could read. Mr. McDade stated that he understood and would try his very best during the test. Your Affiant then departed leaving Dr. Givens to administer the evaluation. Approximately one hour later, Dr. Givens contacted your Affiant by telephone and indicated that McDade was deliberately presenting himself as incapable of understanding even the simplest of instructions. Dr. Givens stated that, in his opinion, McDade was deliberately malingering. Throughout your Affiant's extensive interaction with McDade, your Affiant did not believe McDade was incompetent to appear in court. As a result, and following an evaluation by Dr. Feldman which, although conducted by the government, confirmed your Affiant's suspicions concerning McDade's competency[,] your Affiant was not aware of any non-frivolous grounds to petition this Court for a second competency hearing nor have McDade evaluated for competency. Counsel's position concerning McDade's competency could perhaps be best summarized by this Court's observation at the conclusion of McDade's change of plea hearing: "he's perhaps more competent than he might appear on the record or when you first talked to him."

Doc. No. 8 at 4-5 (citations to record omitted).

At the outset of the August 7, 2009, change of plea hearing referred to by Petersen in his affidavit, the district court recognized that McDade had been diagnosed as being mildly mentally retarded.  Ex. J at 3.  Aylia McKee, who served as co-counsel with Petersen in representing McDade, verified that following a psychological evaluation conducted the previous week, Dr. Thomas Boll, a clinical psychologist, found that McDade was mildly mentally retarded.  *Id*.  After acknowledging that it had already found McDade to be competent, the court then questioned McDade about his educational history, his inability to read, his medical history, and other matters designed to test his ability to understand the proceedings.  *Id*. at 4-11.  The court then asked McKee and the prosecutor if they had reason to doubt McDade's competency.  *Id*. at 12.  Both responded that they did not.  *Id*.  The court then found as follows:

> Based on the representations made to the Court and the Court's own personal observations, as well as the Court's earlier findings, the Court finds the defendant is competent to enter a plea of guilty.

*Id*.

At the conclusion of the change of plea hearing, the district court reinforced its finding that McDade was competent by making the following comments on the record:

> I would just add that when I began this colloquy with the defendant he seemed to be more reserved about answering questions and so forth.  I thought perhaps he didn't understand.  But when he was able to describe the events himself, he came across as quite competent.
>
> So I think he's perhaps more competent than he might appear on the record or when you first talked to him.

*Id*. at 51.

At McDade's sentencing hearing, conducted over a period of two days on February 22 and 23, 2010, the defense presented testimony from the above-mentioned Dr. Boll. Ex. L. Dr. Boll testified that, in his professional opinion, McDade suffered from a "mild mental deficiency." *Id*. at 25. Dr. Boll's evaluation of McDade indicated that McDade had a full-scale IQ of 69. *Id*. at 24. Based on the consistency of results in psychological testing of McDade since his childhood, Dr. Boll disputed Dr. Feldman's opinion that McDade was malingering during his psychiatric evaluation by the Federal Bureau of Prisons. *Id*. at 24-26. Dr. Boll stated that McDade had poor social skills and was a "follower" who conformed his behavior to his environment. *Id*. at 23-27. Dr. Boll did not opine as to McDade's competency to stand trial.

The Government submitted a transcript of Dr. Feldman's videotaped deposition at the sentencing hearing. Ex. M. In that deposition, Dr. Feldman reaffirmed her opinion that McDade was not mentally retarded and was malingering during the Bureau of Prisons evaluation. *Id*. at 13. Consistent with her report submitted at McDade's competency hearing, Dr. Feldman also noted that McDade had "no trouble with his adaptive functioning." *Id*.

On the question of whether McDade was mentally retarded, the district court ultimately credited Dr. Boll's opinion, finding McDade to be "at least mildly mentally retarded." Ex. M at 3-5. Observing that McDade's mental deficiencies did not exempt him from criminal sanctions but had to be taken into account in crafting his sentence, the court

granted the defense's motion for a downward variance and sentenced McDade to 240 months in prison, which was 52 months below the low end of the advisory sentencing guidelines range applicable to McDade. *Id*. at 3-12.

Against this factual background, the court finds that McDade's claim of ineffective assistance of counsel must falter because there is no evidence in the record that McDade was legally incompetent. *See* Doc. No. 19 at 12. Evidence concerning a defendant's behavior, his demeanor at trial, and medical opinions on competence to stand trial are all relevant to a competency determination. *See Medina*, 59 F.3d at 1106. "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges. Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." *Id*. at 1107 (citations omitted).

McDade points to no medical opinion concluding that he was incompetent to stand trial or plead guilty. As noted, Dr. Karl Kirkland's report did not contain an opinion as to McDade's competency to stand trial. Dr. Lisa Feldman concluded that McDade was competent to stand trial and that he was not mentally retarded but was, in fact, malingering during the psychiatric evaluation by the Federal Bureau of Prisons. Although Dr. Thomas Boll disputed Dr. Feldman's opinion that McDade was malingering and opined that McDade was mildly mentally retarded, he did not opine as to McDade's competency to stand trial.

As the Government observes (Doc. No. 19 at 15), even if the district court had

11

expressly found at the competency hearing – as it later did at sentencing – that McDade was mildly mentally retarded, a finding in this regard would not necessarily have affected the court's competency determination.  First, the court was fully aware that there were differing opinions as to whether McDade was mentally retarded at the time it made its competency determination.   Although Dr. Feldman, whose psychiatric evaluation of McDade was considered by the court when making its competency determination, concluded that McDade was feigning the extent of his mental deficiencies, Dr. Feldman's report included the details of McDade's mental health history, including medical records and the results of prior psychiatric evaluations and IQ tests indicating that McDade was mildly mentally retarded. Dr. Kirkland, whose evaluation of  McDade was also considered by the court when making its competency determination, found that McDade had an IQ score falling in the range of mild mental retardation.  As noted, the court was also aware at the time of the change of plea hearing that Dr. Boll had recently evaluated McDade and had diagnosed him as being mildly mentally retarded.  Moreover, it is well settled that "[t]he presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to knowingly and voluntarily enter a plea as well as aid and assist in his own defense."  *Wolf v. United States*, 430 F.2d 443, 445 (10th Cir. 1970).  Low intelligence is not the invariable equivalent of mental incompetency.  *See Medina*, 59 F.3d at 1106; *McCune v. Estelle*, 534 F.2d 611, 612 (5th Cir. 1976).  "Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial."  *Atkins v. Virginia*, 536 U.S. 304, 318 (2002).

At the change of plea hearing, the district court had occasion to further assess McDade's competency, asking him questions about his educational history, his inability to read, his medical history, and other matters related to his ability to understand the proceedings.  At the conclusion of the change of plea hearing, the district court found McDade to be "quite competent" and "more competent than he might appear on the record or when you first talked to him."  The district court's findings are consistent with Petersen's statements in his affidavit that throughout his extensive interactions with McDade over a period of many months, McDade never behaved in a manner causing him to question his competency and that at no time during the change of plea hearing was he concerned that McDade did not understand the proceedings or the rights he was relinquishing.  Petersen's co-counsel, McKee, told the court at the change of plea hearing that she, too, had no reason to question McDade's competency.  The evidence reflects that, throughout the district court proceedings, McDade consulted with his lawyers and exhibited no irrational behavior. The record shows McDade to have been alert and coherent.

For the foregoing reasons, this court concludes that McDade has not demonstrated his counsel was ineffective for failing to do more to investigate and present evidence of McDade's mental deficiencies before and during the competency hearing.  Under the circumstances, counsel's performance was not professionally unreasonable, and McDade fails to establish any prejudice resulting from counsel's performance in this regard.  Nor has McDade demonstrated that his counsel was ineffective for failing to request additional

competency determinations at proceedings that followed the competency hearing. McDade has not shown that there was a basis for counsel to request further competency determinations, or that there was a reasonable likelihood that additional inquiries would have resulted in a finding that he was not competent to stand trial or plead guilty.

Finally, McDade fails to demonstrate that his counsel was ineffective for allowing him to plead guilty in light of his mental deficiencies. Regarding this allegation, Petersen states:

> Mr. McDade also asserts in his first ground that your Affiant did not adequately explain the consequences of pleading guilty to him. McDade asserted: "[c]ounsel did not stop my change of plea hearing when it became clear that I was not making a knowing and voluntary waiver of my rights. Afterwards, counsel still did not withdraw my plea." Throughout the many months of my representation of McDade, I met with him multiple times, both by myself and with either Daniel Carmichael, investigator for the Federal Defender Program, or with Aylia McKee, the Assistant Federal Defender assigned as the second chair to McDade's case. When it became clear that McDade did not wish to risk a trial, both your Affiant and Ms. McKee met with McDade several times and explained what the consequences of both going to trial and entering a pre-trial plea of guilty. At McDade's change of plea hearing before the Court, McDade was asked if he understood what pleading guilty meant, and McDade stated: "To say I did it." During the Change of Plea Hearing, and when questioned by this Court, Ms. McKee stated that she had no doubts as to McDade's competency to proceed. Your Affiant would have immediately requested that this Court stop the proceedings at that point if your Affiant had any doubts as to McDade's competency. Mr. McDade demonstrated throughout the proceedings that he was competent. For example, this Court asked McDade if he understood what "sexually explicit conduct" was, and McDade stated: "having sex." While simplistic, McDade's explanation succinctly explains the term. In addition, before allowing McDade to enter a plea of guilty, this Court went through a lengthy explanation of what a trial was, McDade's rights, what his sentence could be, what rights he would give up if McDade pled guilty, and after about forty minutes or so, asked McDade if he still wanted to plead guilty. McDade stated that he did. During the plea proceedings, this Court was unsure of whether McDade understood the factual basis for his plea. Whereupon, this Court declared a recess so that

your Affiant, Ms. McKee and McDade could review the videotape prior to resuming the factual basis for the plea discussion.  Following that recess, Ms. McKee then reviewed the factual basis for the plea with McDade, at the conclusion of which, this Court was satisfied that McDade understood what he had done.  At the conclusion of the plea hearing, this Court stated on the record that "... I think he's perhaps more competent than he might appear on the record or when you first talked to him."  At no time during the change of plea hearing was your Affiant concerned that McDade did not understand the proceedings or the rights he was relinquishing by changing his plea. Following McDade's change of plea hearing, your Affiant was not aware of any non-frivolous grounds to withdraw the plea of guilty.

Doc. No. 8 at 5-7 (citations to record omitted).

As noted, there is no evidence in the record that McDade was legally incompetent. Thus, Petersen's performance in this regard was neither professionally unreasonable nor prejudicial to McDade.  *Strickland*, *supra*, 466 U.S. at 687-89.  McDade is not entitled to any relief based on this claim.

### 2.    *Counsel's "Advocating" for 20-year Sentence*

McDade also contends that Petersen rendered ineffective assistance of counsel at sentencing when he advocated for a 20-year sentence – rather than the 15-year statutory minimum – without consulting McDade.  Doc. No. 1 at 4; Doc. No. 2 at 25-28.

Addressing this claim, Petersen states in pertinent part:

Prior to the three-day sentencing hearing [sic], which included extensive direct and cross-examination of both Dr. Bolls (testifying that McDade was mentally retarded) and Dr. Feldman (testifying for the government that McDade was not mentally retarded), your Affiant and Ms. McKee met with McDade and explained that although we were asking for a 15-year sentence in the sentencing memorandum, the government was requesting a sentence of 30 years and that it would be likely that the sentence we would finally request from the Court would be 20 years.  Mr. McDade did not inform your Affiant

15

at any time that he desired to request only the mandatory minimum sentence.

Doc. No. 8 at 7.

The statutory sentencing range for McDade's offense was 15 to 30 years' imprisonment. *See* 18 U.S.C. § 2251(e). Based on a total offense level of 38 and a criminal history category of III, McDade's sentencing guidelines imprisonment range was 292 to 360 months. *See* Presentence Investigation Report ("PSI") at 20 (court's findings reflecting changes in the PSI).

Prior to sentencing, Petersen filed a sentencing memorandum on McDade's behalf in which he sought a downward variance – emphasizing McDade's mental limitations and his supposedly limited involvement in the offense – and argued that the court should sentence McDade to the statutory minimum sentence of 180 months (15 years) in prison. Criminal Action No. 2:97cr222-MHT, Doc. No. 203. At the sentencing hearing, the district court solicited argument from Petersen on why McDade should receive a variance and why a sentence at the bottom of the recommended guidelines range (292 months) did not adequately account for McDade's mental limitations and degree of culpability. Ex. L at 50. After referring to the arguments in his sentencing memorandum, Petersen went on to argue that, while McDade's offense was horrific, his was not a typical production-of-child-pornography case, because there was no evidence McDade intended to distribute the pornographic images. *Id*. at 50-51. Throughout Petersen's argument on this issue, the court noted the severity of the offense and expressed skepticism about any suggestion that McDade's involvement was

16

limited.  *Id*.  The court then asked Petersen what sentence he was asking for, and Petersen responded as follows:

> I would ask the Court for a twenty-year sentence....  Although I did state in my sentencing memorandum, I requested the Court to consider a fifteen-year sentence.

*Id*. at 51.  Thus, while Petersen asked for a 20-year sentence, he reminded the court that he had also argued for a 15-year sentence.  The court ultimately granted the motion for a downward variance and sentenced McDade to 240 months (20 years) in prison, 52 months below the low end of the recommended guidelines range.  Ex. M at 3-12.

Petersen's request for a 20-year sentence was reasonable under the circumstances and in light of statements by the district court indicating that it did not find McDade's participation in the offense to be as limited as the defense had argued and that it was disinclined to give much significance to the notion that McDade's offense was not a "typical" production-of-child-pornography case.  McDade offers only unsupported speculation that the court might have granted an even greater downward variance if Petersen had persisted in arguing that he should receive the statutory minimum of 15 years, which would have amounted to a downward variance more than double that which was actually granted.

Both the Government and the probation officer recommended that the court sentence McDade to the full extent allowed, 360 months (30 years) in prison.  Petersen's lawyering resulted in McDade receiving a 52-month downward variance from the bottom of the recommended guidelines range and a sentence that was 10 years lower than what the

Government and probation officer urged.  Under the circumstances, this court cannot say that Petersen's performance was deficient or that his performance was prejudicial to McDade. *Strickland*, *supra*, 466 U.S. at 687-89.  Consequently, McDade is not entitled to any relief based on this claim of ineffective of counsel.

**C.      Competence to Plead Guilty**

McDade asserts that his conviction is unconstitutional because he was not competent to plead guilty.  Doc. No. 1 at 5.  The issue of McDade's competency to stand trial or plead guilty is discussed at length in Part II.B.1 of this Recommendation, supra.  As noted, there is no evidence in the record that McDade was legally incompetent.  The district court squarely confronted the issue of McDade's competency prior to accepting his plea and carefully considered the issue throughout the proceedings.  The district court determined that McDade was able to understand the nature and consequences of the proceedings against him and to assist in his defense.  *See* 18 U.S.C. § 4241(a).  McDade has not presented evidence or argument establishing that the district court's determination was erroneous.  Therefore, he is not entitled to any relief based on this claim.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by McDade be denied with prejudice, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before June 12, 2013**.   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.   Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 29th day of May, 2013.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE